UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

IDREES WEATHERS,                      :
                                      :
              Plaintiff               :      No. 3:CV-13-2069
                                      :
       v.                             :      (Judge Nealon)
                                      :
MARK BAKER, et al.,                   :
                                      :
              Defendants              :

**MEMORANDUM**

## I.    BACKGROUND

Idrees Weathers, an inmate confined in the State Correctional Institution,

Huntingdon ("SCI-Huntingdon"), Pennsylvania, filed the above captioned civil

rights action pursuant to 42 U.S.C. § 1983.  The action proceeds via an amended

complaint.  (Doc. 17).  The named Defendants are Mark Baker, D.O., Wexford

Clinical Director for SCI-Huntingdon; Traci Parkes, Health Care Administrator at

SCI-Huntingdon; Tabb Bickell, Superintendent of SCI-Huntingdon; Paula Price,

Health Care Administrator of SCI-Huntingdon; Trevor Wingard, Superintendent

of SCI-Laurel Highlands; Annette Kowalewski, Health Care Administrator at

SCI-Laurel Highlands; Marjorie Lechene, Registered Nurse Supervisor at

SCI-Laurel Highlands; and Roger Mason, Physical Therapist at SCI-Laurel

Highlands.  Id.

      Presently pending is the Corrections Defendants' motion to dismiss, filed on

behalf of Defendants Bickell, Price, Wingard, Kowalewski, and Lechene.[1]  (Doc. 36).  The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, Defendants' motion to dismiss will be granted.

## II.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662 (2009)

---

[1]Defendants Mark Baker, Traci Parkes, and Roger Mason do not join in the Corrections Defendants' motion to dismiss.  Defendants Baker and Parkes filed an answer on December 30, 2013, (Doc. 31), and Defendant Mason has not been served with the complaint.

(quoting <u>Twombly</u>, 550 U.S. at 556).  "[L]abels and conclusions" are not enough and a court  "is not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555 (quoted case omitted).  Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal."  <u>Capogrosso v. The Supreme Court of New Jersey</u>, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, the court must "conduct a two-part analysis."  <u>Fowler</u>, 578 F.3d at 210.  First, the factual elements are separated from the legal elements, and legal conclusions are disregarded.  <u>Id</u>. at 210-11.  Second, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Id</u>. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted <u>in forma pauperis</u> status to pursue this suit.  The court's obligation to dismiss a complaint under the screening provisions of the Prison Litigation Reform Act ("PLRA") that fails to state a claim is not excused even after defendants have filed a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a

ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless <u>sua</u> <u>sponte</u> rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.  <u>See id.</u>; <u>Dare v. U.S.</u>, 2007 WL 1811198, *4 (W.D. Pa. 2007), <u>aff'd</u>, 264 Fed Appx. 183 (3d Cir. 2008).

## III.   <u>Allegations in Plaintiff's Amended Complaint and Attached Exhibits.</u>

Plaintiff claims that on March 14, 2012, he tore his patellar tendon playing basketball at SCI-Huntingdon.  (Doc. 17 at 4).  He states that he was "taken to an emergency room in a hospital in Altoona immediately that day" and "a brace was put on Plaintiff's leg and he returned to the prison a few hours later."  <u>Id</u>.

On March 22, 2012, he was taken back to the Altoona Hospital where "a doctor told the escorting officers that Plaintiff had to have surgery immediately"; however, he was "returned to the prison that day without having the surgery."  <u>Id</u>.

On March 24, 2012, Plaintiff was "taken to a hospital in State College and given the surgery on his knee."  (Doc. 17 at 5).

On April 2, 2013, Plaintiff was taken to J.C. Blair Orthopedic Center for physical therapy.  <u>Id</u>.

On April 13, 2012, Plaintiff was taken to the University Orthopedic Center for his appointment with Dr. Stauff, the surgeon who operated on his knee.  <u>Id</u>. When asked about physical therapy, Plaintiff told the doctor that he had been to physical therapy only one time.  <u>Id</u>.  Dr. Stauff then "wrote a treatment plan for

Plaintiff to do physical therapy three times a week, and made an appointment to see Plaintiff again in two weeks to see and monitor how his knee was coming along." Id. He also told Plaintiff that the "immobilizer brace and the crutches" he was using "were going to be taken from him in a few weeks; possibly when [Plaintiff] saw Dr. Stauff at the next appointment he made for two weeks later." Id.

Plaintiff alleges that "the medical staff responsible for health care at SCI-Huntingdon made the decision for him to be temporarily transferred to SCI-Laurel Highlands to do physical therapy", and on April 16, 2012, he was temporarily transferred to SCI-Laurel Highlands. Id.

Plaintiff states that he was not brought for his two week follow-up with Dr. Stauff, and "brought the appointment to the attention of Roger Mason, the Laurel Highlands physical therapist" and to "the attention of Annette Kowalewski and Marjorie Lechene." (Doc. 17 at 6). Plaintiff claims that when he asked Roger Mason about when he was going to go to his appointment, Mason would respond "soon", and that although Plaintiff told Mason he needed to remove the immobilizer and walk without the crutches, Mason "told him that he had to keep the brace on and walk with the crutches until he went to his appointment, or else he would receive a misconduct." Id.

On June 7, 2012, Plaintiff was seen by Dr. Stauff. Id. He claims that Dr.

5

Stauff was "mad" because Plaintiff was to have seen him "a long time ago and because [Plaintiff] had the brace on and was walking on crutches for far too long." Id. Dr. Stauff "immediately took the brace off [Plaintiff's] leg and took [him] off the crutches" and prescribed "aggressive physical therapy three days a week" and made an appointment to see Plaintiff in two weeks. Id.

On August 12, 2012, Plaintiff submitted an Inmate's Request to Staff Member to Defendant Health Care Administrator Annette Kowalewski, complaining that he missed his follow-up appointment with Dr. Stauff and that his knee was not getting any better. (Doc. 17 at 24, Inmate's Request to Staff Member). On August 15, 2012, Defendant Kowalewski responded that she reviewed Plaintiff's chart, and that Plaintiff had not "put in any sick call slips about this complaint" and that "the notes from PT dated 6-12, 7-13 & 8-10-12 all show increasing flexibility in your knee with noted improvement each time." Id. (emphasis in original). She advised Weathers that "if you are having problems please submit a sick call slip." Id.

On August 27, 2012, Plaintiff submitted an Inmate's Request to Staff Member to Defendant Registered Nurse Supervisor Marjorie Lechene, stating that he "had an appointment way back in June to see the surgeon that did the surgery on [his] knee" and he "hasn't been to that appointment." (Doc. 17 at 23, Inmate's Request to Staff Member). Plaintiff further complains that even though he goes

"to physical therapy and work it out on the unit everyday", it's "messed up." Id.

Thus, Weathers requests that he be sent to see the surgeon that [he] was supposed

to see back in June or send [him] back to Huntingdon" and advised that he was

"not going back to physical therapy until [he] hear[s] from you." Id.[2]

> On August 28, 2012, Defendant Lechene responded with the following:

> You did see the Altoona Orthopedic surgeon on 6-7-12 & you were
> prescribed aggressive exercises & the brace & crutches were to be
> discontinued & you are to walk but not run.

> We called the office today & they stated no scheduled follow-up is
> needed.  You are making improvement in PT per Mr. Mason.  Please
> discuss your concerns with Mr. Mason or place a sick call slip in to
> have your concerns assessed.

Id.

> On September 5, 2012, Weathers submitted an Inmate's Request to Staff

Member to Defendant SCI-Laurel Highlands Superintendent Trevor Wingard,

complaining the medical staff is not doing what the surgeon recommended and

that his knee is not improving.  (Doc. 17 at 20-11, Inmate's Requests to Staff

---

[2]Plaintiff also expressed his dissatisfaction with Defendant, Physical Therapist
Roger Mason, who he claims "was not there half of the days that Plaintiff had
physical therapy" because he worked at another prison and had an outside practice.
(Doc. 17 at 9).  He further complains that Defendant Mason's "assistants only push
on [his] leg to try to bend his knee, which was extremely painful everyday he went
to have physical therapy" and "even though it was extremely painful, Plaintiff let it
be done because he was following orders," yet "Plaintiff's knee still would not bend."
Id.

Member).  Specifically, he complains that he was not taken for his follow-up
appointment, and that the surgeon "wanted [him] to do physical therapy 5 days a
week instead of the 3 [he] was doing already because he said [Plaintiff] was far
behind schedule of where [his] knee was supposed to be at that time."  Id.
Defendant Wingard responded on September 14, 2012, that he had "reviewed the
situation" and that it is his "opinion that your medical issues are properly being
handled at SCI-Laurel Highlands."  Id.

On September 24, 2012, Plaintiff filed Grievance No. 429515, indicating his
dissatisfaction with the medical treatment at SCI-Laurel Highlands, and requesting
pain medication for his knee.  (Doc. 17 at 28, Official Inmate Grievance).

In a response dated October 5, 2012, Grievance No. 429515 was upheld in
part and denied in part.  (Doc. 17 at 29, Initial Review Response).  Defendant
Kowalewski found the following:

> -On 6/8/12 you were given permission to go to commissary and main
> yard.
> -In this instance we concur with your request for pain medication.  On
> receipt of this grievance you have been transferred back to SCI-
> Huntingdon. We have contacted them to evaluate your medication
> needs.

Id.

Plaintiff states that "immediately back at Huntingdon, [he] put in a sick call
slip to let the prison know that his knee is still messed up and hurts and won't

bend." (Doc. 17 at 10).  Plaintiff was given a prescription for pain pills and was scheduled to see the prison doctor.  Id.  Plaintiff claims that "the prison doctor did nothing for Plaintiff."  Id.

Plaintiff claims that "after months of complaining, wearing a bendable knee brace and constant pain", on January 3, 2013, he was taken to University Orthopedic Center to see an outside specialist.  (Doc. 17 at 11).  Dr. Stauff "was not there anymore[3], and [Plaintiff] saw Dr. Hubler."  Id.  Dr. Hubler prescribed "aggressive  physical therapy for [Plaintiff] for 12 weeks and made an appointment for Plaintiff to see him again in March to see how his knee is coming along."  Id.  "Plaintiff told Dr. Hubler to just tell him what to do so he can do it himself, because he didn't want to go back to Laurel Highlands, because they don't help people there."  Id.  Dr. Hubler told Plaintiff that he "can't do physical therapy by himself, and that he needed to do 'aggressive' physical therapy 3 days a week with a licensed physical therapist."  Id.  Plaintiff claims that he "waited and waited, and he got no physical therapy."  Id.

Plaintiff alleges that Defendant, Wexford Clinical Director Mark Baker,

---

[3]Plaintiff states that Dr. Hubler told Plaintiff that "Dr. Stauff was not there anymore because of [Plaintiff's] situation, but did not go into detail."  Id.  Plaintiff believes that "Dr. Stauff mishandled [his] situation some type of way with his communication with the prison on what to do for [Plaintiff] or the appointment or something."  Id.

"made the decision to not have [Plaintiff] do physical therapy 3 days a week, against orders," and, instead, on March 12, 2013, had him "see a man at Huntingdon State Prison that stated he was a physical therapist." (Doc. 17 at 12). "This man looked at Plaintiff's knee, saw how far it bent, and gave Plaintiff a paper with drawings on it and told Plaintiff to do those exercises everyday." Id. Plaintiff "told this man that Dr. Hubler said that [he] was not able to do 'aggressive' physical therapy by himself, and the man told Plaintiff 'you have to do it by yourself'." Id.

Plaintiff grieved the decision not to provide him physical therapy to final review, where the grievance officer's decision that Plaintiff "was receiving adequate medical care and needed to do physical therapy by himself" was upheld. Id. Specifically, the Chief Grievance Officer found the following:

> Your issue regarding your medical care related to your knee injury was referred to the Bureau of Health Care Services for review. The Bureau reviewed the medical records and has determined the medical care provided to you has been reasonable and appropriate. These clinical decisions are made by your attending practitioner. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. There is no evidence of deliberate indifference found. Your requested relief is denied.

(Doc. 17 at 34, Final Appeal Decisions).

In April, Plaintiff's foot starting hurting him. (Doc. 17 at 13). He signed up

for sick call and was told he had plantar fasciitis. Id. Around the same time, "Plaintiff's other knee, the knee he didn't have surgery on started hurting even worse than the knee he had surgery on." Id. Plaintiff went to sick call about the other knee too and "begged to go to see the outside specialist to have something done to help him." Id.

On April 15, 2013, Plaintiff was taken to see Dr. Hubler. Id. He claims "Dr. Hubler was upset about the treatment [Plaintiff] received for [his] knee and said that the prisons never give any of the inmates he's seen the proper treatment they need. He made another order for 'aggressive' physical therapy for 8 weeks and he made another appointment for Plaintiff to see him." (Doc. 17 at 14). Dr. Hubler also "stated that he wanted to do another surgery on [Plaintiff's] knee, but it would be useless if [he] didn't get the proper physical therapy that [he] needed, because [he] would be in the same condition [he is] in now." Id.

Plaintiff claims that he "saw the same man in Huntingdon that gave him the paper with the drawings on it again for about five minutes, and was told to do the same exercises by himself again." Id. Plaintiff "continued to go through pain and continue to complaint to the medical staff and ask for treatment." Id.

On July 24, 2013, he filed Grievance No. 470665, requesting medical treatment for his knee and foot. (Doc. 17 at 32, Initial Review Response).

11

On August 23, 2013, Grievance No. 470665 was denied based on the

following:

> Your grievance dated 7/24/2013 has been received and reviewed.
> You allege that you requested testing on the knee you did not have
> surgery on due to burning and a bone in your foot sticking out.
>
> Upon review of your medical record it was noted that you were
> ordered x-rays of your right foot and had them done on 8/7/2013.
> There was no evidence of a current fracture or swelling. An
> irregularity was noted possibly due to a prior fracture. You still have
> a consult for physical therapy. You also have recently been ordered
> lab work including a CBC, Sed Rate, ANA and rheumatoid factor
> which are specific labs that would help in diagnosis of your
> condition. You should be followed up around the week of September
> 16, 2013 if all labs are back. According to the notes in your medical
> record you reported to the MD on 8/22/2013 that you were better. If
> you are it would appear that you responded to the Aleve and
> exercises. Should you have further issues please sign up for sick call
> to further discuss them. Otherwise you will be followed up once your
> lab work is back. I wish you the best with your continued medical
> care.
>
> Your grievance is without merit and is denied. You have received
> treatment for your pain and burning in your foot and knee.
> Sometimes these symptoms come and go and could possibly return
> which is not an indication of inappropriate medical care, it is how
> inflammation occurs. Unfortunately, there is no miracle cure.

Id.

Plaintiff appealed the denial of his grievance to the Facility Manager, who,

on September 10, 2013, upheld the grievance coordinator's denial with the

following:

> In reviewing your grievance and appeal, I note that your concern with

your health care was appropriately addressed by Ms. Price. In your appeal, you repeat the complaints from you initial grievance, and you note nothing was ever done for you until you did your own research and took the information you found to the practitioners. As Ms. Price notes in her response to your initial grievance, you did have x-rays done which revealed no evidence of a current fracture or swelling. The irregularity you describe may be due to an old fracture. By your own report, the Aleve his helping. As Ms. Price notes, sometimes inflamation comes and goes, but this is not an indication of lack of appropriate treatment. I must agree you have received treatment for the pain and burning in your foot and knee. I can only suggest you work with the practitioners to determine the best course of treatment for your issues. Once the lab results are back, you will be seen to discuss the results.

In closing, I can only reiterate that I uphold the response provided by the grievance officer. Your grievance is found to be without merit.

(Doc. 17 at 31, Facility Manager's Appeal Response).

Plaintiff states that he had the blood test and "was told that everything was normal." (Doc. 17 at 15). He was also told that the x-ray of his foot showed "that the two bones sticking out of the top of his foot were bone spurs, coming from an earlier fracture of his foot" and that the "reason the other knee hurt worse than the knee he had surgery on is because he has been over compensating on his other knee because the leg he had surgery on is so weak." Id. He claims, however, that he "takes Aleve now for pain, and both knees and now both his feet constantly hurt him." Id.

On August 2, 2013, Plaintiff filed the above captioned action in which he

13

claims

> deliberate indifference to the Plaintiff's medical needs by ignoring
> obvious conditions of Plaintiff, failure to provide the treatment the
> outside specialist ordered by not giving Plaintiff physical therapy
> three days a week at Laurel Highlands or Huntingdon, the delay in
> treatment because [he's] hurting and [his] knee won't bend, and [he]
> hasn't got the treatment that was ordered by the outside specialist, and
> [he] had surgery almost 2 years ago, [and] making medical decision
> based on non-medical factors like the cost of a physical therapist 3
> days a week, and Mark Baker made the decision to have someone
> come to Huntingdon and see [Plaintiff] for 5 minutes, and allowing
> [Plaintiff] to see a specialist but then refusing to carry out the
> specialist's recommendations.

(Doc. 17 at 16).  For relief, Plaintiff seeks compensatory and punitive damages, as

well as injunctive relief, for Defendants "to send Plaintiff to University Orthopedic

Center to see Dr. Hubler and let him do the second surgery that he said he wanted

to do on Plaintiff and to give Plaintiff whatever type of physical therapy Dr.

Hubler prescribed."  (Doc. 17 at 17).

## IV.   **Discussion**

Pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that his or her

federal constitutional or statutory rights were violated by a person acting under the

color of state law.  See Kost v. Kozakiewitz, 1 F.3d 176, 184 (3d Cir. 1993).

Plaintiff claims he was deprived of his Eighth Amendment right to receive

adequate medical treatment while incarcerated at both SCI-Laurel Highlands and

14

SCI-Huntingdon.[4]

A prison official's medical treatment of a prisoner, or lack thereof, will only give rise to a constitutional violation where: (1) the prisoner is suffering from "a serious medical need"; and (2) the prison official's acts or omissions demonstrate "deliberate indifference" to that need. See Montgomery v. Pinchak, 294 F.3d 494, 499 (3d Cir. 2002).  Acts of negligence or medical malpractice, without more, are insufficient to support a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 106 (1976).  However, the fact that a prison official provides an inmate with some form of medical treatment does not necessarily absolve the official of liability under the Eighth Amendment. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

## A. **Serious Medical Need**

A prisoner's medical need is sufficiently "serious" where, for example, it "has been diagnosed by a physician as requiring treatment or ... is so obvious that

---

[4]Defendants do not dispute that they were operating under the color of state law in connection with this case. See West v. Atkins, 487 U.S. 42, 54 (1988) (holding that a physician under contract with a state prison to provide medical treatment to inmates acts under the color of state law). Cf. Spruill v. Gillis, 372 F.3d 218, 236–37 (3d Cir. 2004) (accepting that § 1983 claims could extend to non-medical prison officials, such as those who assist prison physicians, provided there is evidence that the officials have reason to believe medical personnel are mistreating an inmate).

a lay person would easily recognize the necessity of a doctor's attention."

Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.

1987).  A medical condition may also be considered serious when, due to a delay

in treatment, the prisoner experiences the "unnecessary and wanton infliction of

pain" or life-long disability.  Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103

(1976)).

In light of this standard, it is concluded that Plaintiff's injury is sufficiently

severe to be a serious medical need.  His condition—a torn patellar tendon—was

diagnosed by a physician and necessitated surgery.  Further, a medical condition

"which threatens a plaintiff's ability to walk, even on a non-permanent basis, falls

within the ambit of a serious medical need."  Taylor v. Plousis, 101 F. Supp. 2d

255, 262 (D.N.J. 2000).

## B. **Deliberate Indifference**

A prison official acts with deliberate indifference if he or she "knows of and

disregards an excessive risk to inmate health and safety."  Natale v. Camden

County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v.

Brennan, 511 U.S. 825, 837 (1994)).  This is a subjective standard of liability,

consistent with "recklessness as the term is defined in criminal law."  Nicci v.

Morra, 212 F.3d 798, 811 (3d Cir. 2000).  It is insufficient for the official to

16

merely be "aware of facts from which the inference can be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837.  The official must actually know of the risk.  Id.

The Court of Appeals for the Third Circuit has recognized that deliberate indifference may exist in a variety of circumstances, including where a prison official: (1) denies a prisoner's reasonable requests for treatment, and "such denial exposes [him or her] 'to undue suffering or the threat of tangible residual injury,'" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting Lanzaro, 834 F.2d at 346); (2) knows of a prisoner's need for treatment but refuses to provide it, Durmer v. O'Carroll, 991 F.2d 64, 67–69 (3d Cir. 1993); (3) delays necessary medical treatment for non-medical reasons; (4) prevents a prisoner from receiving needed or recommended medical care; or (5) persists in a course of treatment which results in continued pain and the risk of permanent injury.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (collecting cases).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

17

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer, 685 F. Supp. at 1339.

### 1. SCI-Laurel Highlands Defendants[5]

The allegations in Plaintiff's complaint and his supporting documentation, clearly demonstrate that he received medical attention while housed at SCI-Retreat, and that the attention he received lacks the requisite deliberate indifference to support a Section 1983 claim. By Plaintiff's own account, he was provided with physical therapy while housed at SCI-Laurel Highlands. His exhibits indicate that he was attending physical therapy and was making improvement in the therapy. To the extent that Plaintiff was dissatisfied with the fact that Defendant, Physical Therapist Roger Mason, was not always available to personally administer his physical therapy, and Mason's assistants administered Plaintiff's therapy, such allegations, at best, demonstrate Plaintiff's disagreement

---

[5]These Defendants are Trevor Wingard, Superintendent of SCI-Laurel Highlands; Annette Kowalewski, Health Care Administrator at SCI-Laurel Highlands; Marjorie Lechene, Registered Nurse Supervisor at SCI-Laurel Highlands; and Roger Mason, Physical Therapist at SCI-Laurel Highlands.

with medical personnel.  Though he may have wished that Defendant Mason was the therapist who would work with Plaintiff at each session, his disagreement with who administered the physical therapy is not enough to state a §1983 claim. Spruill, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation).  This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon him.  Farmer, 685 F. Supp. at 1339; Rouse, 182 F.3d at 197.  To the extent Plaintiff alleges that Defendants failed to take him to a follow-up appointment after his June, 2012 appointment, his own exhibits indicate that Defendants called the Orthopedic specialist, who indicated that no scheduled follow-up was needed.[6]  See (Doc. 17 at 23, Inmate's Request to Staff Member). Thus, the allegations in the Plaintiff's complaint amount to nothing more than his subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison.  At most, the allegations in the complaint only rise to the level of mere negligence.  As simple negligence can not serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil

---

[6]Additionally, Plaintiff's exhibits demonstrate that he impeded his physical therapy progress when he refused to go back to physical therapy until he got an appointment with an outside specialist. See (Doc. 17 at 23).

rights complaint fails to articulate an arguable claim.[7]  See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002).  Because it is clear from the complaint and supporting documentation that Plaintiff received adequate medical treatment while housed at SCI-Laurel Highlands, and merely disagrees with the treatment he received during this time, it is determined that amendment on these claims would be futile.

Additionally, Defendants argue that Plaintiff fails to state a claim against Defendants Wingard, Kowalewski, and Lechene because they lack any personal involvement in the wrongs, and Plaintiff's allegations against these Defendants are based solely upon their supervisory roles.  (Doc. 37 at 5-7).  The Court agrees.

Local government units and supervisors typically are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v.

---

[7]Although Defendant, Physical Therapist Roger Mason, has never been served with the complaint, and no response has been filed on his behalf, based on the above discussion, the Court finds that this Defendant is entitled to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (finding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Id.).  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207.  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A § 1983 action brought against a person in his or her official capacity

"generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to Defendants Wingard, Kowalewski,[8] and Lechene, a review of the Complaint confirms that other than being listed as Defendants there are no specific assertions that any of them had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment.  Rather, the claims

---

[8]To the extent that Defendant Kowalewski is sued in her capacity as Grievance Coordinator for denying Plaintiff's grievance, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (determining that involvement in post-incident grievance process is not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (finding that because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, 2007 WL 4460617, *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Thus, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F.Supp. 922, 931–32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992).

22

asserted against these Defendants are premised either upon their respective supervisory positions within the DOC or their handling of Plaintiff's subsequent Inmate's Requests to Staff and institutional grievances. Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of Rode. Accordingly, Defendants Wingard, Kowalewski, and Lechene are entitled to dismissal.

## 2. SCI-Huntingdon Defendants

Defendants move for dismissal of SCI-Huntingdon Superintendent Tabb Bickell, and Health Care Administrator Paula Price, arguing, pursuant to the holding in Durmer, that, as non-physicians, they cannot be considered deliberately indifferent in violation of the Eighth Amendment by virtue of their non-medical roles. (Doc. 37 at 5). The Court agrees.

A prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Durmer, 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236. Although

23

Plaintiff submits, as an exhibit, his grievance which was denied by Defendant Price and affirmed by Defendant Bickell, this grievance related to Plaintiff's complaints and requests for testing on the knee that did not undergo surgery, his right foot, and blood work. See (Doc. 17 at 31, 32). There is no indication that these Defendants had knowledge of the gravamen of Plaintiff's complaint, specifically, denial of recommended post surgical physical therapy.

Regardless, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (stating that involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (determining that because the prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, 2007 WL 4460617, *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Consequently, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931–32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). These Defendants are therefore entitled to dismissal.

A separate Order will be issued.

Dated: September 23, 2014

_____
**United States District Judge**